**Re: USA**

**v.**

**Sylvester YOUNG, a/k/a Buddy Young.**

**CR. 90–30049–01.**

United States District Court,
D. South Dakota.

Dec. 18, 1990.

Mikal Hanson, Asst. U.S. Atty., Pierre, S.D., for plaintiff.

Jana Miner–Lunsford, Gregory, S.D., for defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

The defendant, Sylvester Young, was indicted on charges of Aggravated Sexual Assault and Sexual Assault in violation of 18 U.S.C. § 2241(a) and § 2242(2)(B). The United States notified the Court and the defendant that it planned to introduce certain DNA evidence which would connect the defendant to the crime. The defendant filed motions requesting a *Frye* hearing on the admissibility of the DNA evidence and asking the Court to exclude all DNA evidence. A *Frye* hearing was held on November 26 and 27, 1990.

FACTS

On January 26, 1989, JC, a 15 year old Indian girl, went to the Rosebud Indian Health Service Hospital where it was determined that she was pregnant. JC identified the defendant as the father and indicated that he had sexually assaulted her. JC subsequently underwent an abortion. The aborted fetus, blood from JC, and blood taken by consent from the defendant were sent to Cellmark Laboratories in Germantown, Maryland, for forensic DNA identification. Using a technique known as restriction fragment length polymorphism (RFLP), the lab determined that there was a DNA match and an extremely high probability that the defendant was the father of the fetus.

Deoxyribonucleic acid, commonly called DNA, is the molecule found in the nucleus of nearly all cells of every living organism including the human body. DNA information can be extracted from all nucleated cells including cells from blood, semen, saliva, or hair. This information is constant in all nucleated cells of each individual's body and will not change throughout an individual's lifetime. The DNA, consisting of over three billion base pairs per cell, is arranged into packets of information known as chromosomes in a double-stranded helical pattern which is unique (with the exception of identical twins) to each individual. Though as much as 99% of DNA is identical from person to person, certain areas of DNA, known as polymorphisms, are highly variable. It is these polymorphisms which give each individual his or her own unique DNA code.

In recent years, scientists have discovered certain methods by which they can extract the DNA from a cell and examine the patterns of information contained in those cells. Using these methods, scientists claim that they are now able to determine if two samples of DNA containing material have come from the same individual or, as in this case, if there is a maternal or paternal relationship within two samples.

The technique used in this case is known as the restriction fragment length polymorphism (RFLP) technique. This technique involves six basic steps:

1. EXTRACTION OF DNA. The DNA is extracted from the nucleated cells of tissue or bodily fluid such as blood or semen.

2. FRAGMENTATION. A restriction enzyme is applied to the DNA. This enzyme cuts the DNA into fragment lengths at specific locations along the molecular chain.

3. GEL ELECTROPHORESIS. The DNA fragments are then separated by size. This is accomplished by placing the fragments in an electrically charged agarose gel. The DNA, carrying a negative

charge, is attracted to a positively charged pole. The gel acts as sieve allowing the smaller fragments to travel further in the gel. This results in an orderly arrangement of the DNA fragments by size along parallel lines.

4. SOUTHERN BLOTTING. The double stranded DNA fragments are "unzipped" into two strands. The pattern which was formed by the electrophoresis is then transferred to a sheet of nylon membrane which permanently fixes the fragments into their respective positions.

5. HYBRIDIZATION. Radioactive probes, designed to locate particular sequences of the unzipped DNA, are applied to the sample. These probes then bond to their assigned fragment.

6. AUTORADIOGRAPHY. The hybridized membrane is then exposed to an x-ray film. When the film is processed, black bands appear at the locations where the radioactive probes attached themselves to the DNA fragments.

The laboratory can then examine the processed x-rays and, based upon the location of the markings, make a determination as to whether a DNA "match" has occurred.

## DISCUSSION AND ANALYSIS

■ In *United States v. Two Bulls*, 918 F.2d 56, 61 (8th Cir.1990), the Eighth Circuit set forth the procedure to be followed on the admissibility of DNA evidence. The trial court is to decide:

(1) whether DNA evidence is generally accepted by the scientific community;

(2) whether the testing procedures used in this case are generally accepted as reliable if performed properly;

(3) whether the test was performed properly in this case;

(4) whether the evidence is more prejudicial than probative in this case; and

(5) whether the statistics used to determine the probability of someone having the same genetic characteristics is more probative than prejudicial under Rule 403.

*Id.*

*Acceptance by the Scientific Community*

■ The government produced two experts at the *Frye* hearing to testify concerning the acceptance of DNA evidence by the scientific community. Dr. Stephen Daiger, a specialist in human population genetics at Baylor University, testified concerning the theories underlying DNA profiling. Dr. Daiger stated that DNA profiling is generally accepted by the scientific community and widely and routinely used. Dr. Lisa Forman, a specialist in population genetics at Cellmark Laboratories, gave testimony regarding the history and uses of DNA profiling. Dr. Forman also testified that DNA profiling is accepted by the scientific community. She stated that over 10,000 molecular biology labs across the world use DNA technology. Defendant offered no evidence to rebut the government's claims.[1] The Court therefore finds that DNA evidence is generally accepted by the scientific community.

*Reliability of Testing Procedures Used in This Case*

Dr. Daiger and Dr. Forman each gave extensive testimony regarding RFLP, the specific DNA profiling technique used in this case. Each expert presented a step-by-step explanation of the technique describing its principles and purposes. There was testimony that the RFLP technique is not a novel approach but has been in use for several years and is being used by five to ten thousand laboratories throughout the world.

■ There was also discussion concerning a problem known as "band shifting" which sometimes occurs when the RFLP technique is used. In band shifting, the DNA particles which are to be matched shift from their true location, causing an improper reading. Dr. Forman testified

---

**1.** After the *Frye* hearing, the parties stipulated that the DNA evidence was generally accepted by the scientific community, that the testing procedures used in this case are generally accepted as reliable if performed properly, and that the test was performed properly in this case.

that it would be extremely rare in a case such as this, where the fetal DNA was matched with both the mother's and the alleged father's DNA, for band shifting to produce a false positive reading. In fact, Dr. Forman testified that the RFLP technique was extremely reliable when properly performed. She stated that in her opinion, the RFLP technique would not produce a false positive without some type of human error. The defendant offered no evidence to refute the government's showing that the RFLP technique is reliable when properly performed. The Court therefore finds that the RFLP technique is reliable when properly performed.

*Proper Performance of the Tests in This Case*

■ The government produced Dr. Lisa Forman and Tony McNeil, two biologists at Cellmark Laboratories who performed the DNA testing used in this case. Mr. McNeil testified as to the safety procedures and protocol used to ensure that no mistakes are made. He further testified that if any errors were made they would be immediately recognizable or result in a false negative reading. Because of the nature of the tests and the use of both the mother's DNA and the alleged father's DNA, a false positive would be extremely unlikely to result in a case such as this. While the defendant was able to point out mistakes that had been made in the past by Cellmark Laboratories in DNA testing, he was unable to rebut the government's evidence that the testing had been properly performed in this case. The Court therefore finds that the government has made a sufficient showing that the DNA testing in this case was properly performed.

*More Probative than Prejudicial*

■ Federal Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of

undue delay, waste of time, or needless presentation of cumulative evidence.

There can be little dispute that the results of the DNA testing are highly relevant to this case. The matching of the defendant's DNA to the fetal DNA demonstrates a high probability that the defendant was the father of the fetus. This is then obvious proof that the defendant had sexual contact with JC to an extent that she became pregnant. Defendant had, when originally questioned about the incident, denied that he had had sexual intercourse with JC. This evidence is therefore highly probative of a principal fact at issue in this case.

The DNA evidence, though clearly relevant to the issues in this case, may be excluded if it is substantially outweighed by the danger of unfair prejudice. Though all evidence used against a party is prejudicial simply by the fact that it is adverse, Rule 403 requires that the prejudice be "unfair." " 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403 advisory committee note. Upon review of the facts of this case, the Court finds that the admission of the DNA evidence would not suggest decision on an improper basis but, rather, would provide assistance to the jury in assessing the case as a whole and reaching a decision based on the law. Therefore, defendant's objection to admission of the DNA evidence because it is more prejudicial than probative is overruled.

*Statistical Evidence*

After this Court had ruled that the DNA testing results would be admitted, but before this Court had made a ruling on the statistical evidence, the defendant withdrew his objection to the use of the statistical evidence. Counsel for the defendant indicated that the Court's ruling on the admissibility of the DNA evidence affected the defense theory that would be presented at trial and that the government could use whatever statistical evidence it wanted.[2] For that reason, the Court allowed the

2. At trial, the defendant admitted to having some sexual contact with JC.

government to present evidence that the chances of a random individual matching the DNA of another using the RFLP technique was one in four million.[3]

CONCLUSION

 Based upon the evidence submitted to the court at the November 26 and 27, 1990 *Frye* hearing, the court finds that the *Two Bulls* test for the admission of DNA evidence has been met. Accordingly, the defendant's motion to suppress DNA evidence is denied.

3. The decision to allow the use of statistical evidence was based almost entirely on defense counsel's decision to withdraw her objection to the use of the evidence. The Court notes that Dr. Forman was not able to make statistical calculations regarding members of the Sioux Indian Tribe based upon the small test sample that was available.